**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DERRICK MORGAN,

                                        Plaintiff,

          - v -                                              Civ. No. 9:15-CV-0024
                                                                          (GTS/DJS)

LUFT, *Correctional Officer, Greene Correctional*
*Facility* and SERGEANT FARRELL, *Correctional Officer,*
*Greene Correctional Facility*,

                                        Defendants.


**APPEARANCES:**                              **OF COUNSEL:**

DERRICK MORGAN
Plaintiff, *Pro Se*
13-R-3119
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN            CHRISTOPHER J. HUMMEL, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224


**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

On January 9, 2015, *pro se* Plaintiff Derrick Morgan commenced this civil rights action,

pursuant to 42 U.S.C. § 1983, asserting claims arising from when he was incarcerated at Greene

Correctional Facility ("Greene") while in the custody of the Department of Corrections and

Community Supervision ("DOCCS"). Dkt. No. 1, Compl. Plaintiff's remaining claims are: (1) a

First Amendment retaliation claim and an Eighth Amendment excessive force claim against

Defendant Luft; and (2) First Amendment retaliation claims against Defendant Farrell.  *See* Dkt. No. 5.  Presently before the Court is Defendants' Motion for Summary Judgment pursuant to FED. R. CIV. P. 56.  Plaintiff has filed a Response, Dkt. Nos. 68, Pl.'s Resp. & 70, Pl.'s Suppl. Resp., and Defendants have filed a Reply, Dkt. No. 69, Defs.' Reply.  In his Response, Plaintiff requests that the Court reopen discovery under FED. R. CIV. P. 56(d).  *See* Dkt. No. 68-1.  For the reasons that follow, it is recommended that Defendants' Motion be **granted in part** and **denied in part**.[1]

## I.  BACKGROUND

Plaintiff arrived at Greene sometime in the Fall or Winter of 2013.  Dkt. No. 64-2, Affirm. of Christopher Hummel, dated Oct. 14, 2016, Ex. A, Dep. of Derrick Morgan, dated Nov. 13, 2015 ("Pl.'s Nov. Dep.") at p. 9.  Plaintiff was housed in the E-1 dormitory, which is on the medical floor, because he has a heart condition.  *Id.*  Plaintiff states that he has had multiple heart attacks and has seven stents in his heart.  Hummel Affirm., Ex. B, Dep. of Derrick Morgan, dated Aug. 11, 2016 ("Pl.'s Aug. Dep.") at p. 7.

Plaintiff was a representative on the Inmate Grievance Resolution Committee.  Pl.'s Nov. Dep. at pp. 11-12.   On June 14, 2014, Plaintiff filed a grievance against Defendant Correction Officer Luft.  *Id.*, Ex. A.  In the grievance, Plaintiff asserted that certain inmates had complained to him of statements made by Luft that he was planning to set an inmate up either by planting a weapon in someone's cube or by punching himself in the face.  *Id.*  Plaintiff states that certain inmates felt

---

[1] Also pending is a Letter-Motion filed by Plaintiff on September 11, 2016, in which he requests a twenty-day extension of time to reply to the Defendants' response to his discovery requests; Plaintiff states that he hopes to resolve Defendants' objections to his discovery demands before filing a motion to compel. Dkt. No. 61. Plaintiff's Response papers to Defendants' Motion contain correspondence between Plaintiff and Defendants' counsel regarding Plaintiff's demands, in which Defendants' counsel maintains his objections to the demands. *See* Dkt. No. 68-2, Aff. of Derrick Morgan, dated Nov. 21, 2016, Exs., Exs. C & D. Plaintiff did not file a motion to compel. Plaintiff's Letter-Motion (Dkt. No. 61) is therefore **denied**.

threatened by these statements and asked that he file a grievance as the dorm representative. Pl.'s Nov. Dep. at pp. 11-12.

On June 28, 2014, at approximately 8:40 a.m., Luft informed Plaintiff that he was being moved to another dormitory and told him to pack up his possessions. *Id.* at p. 21; Dkt. No. 64-4, Decl. of Ryan Luft, dated Oct. 11, 2016, at ¶ 6. According to Luft, Plaintiff became very upset when he learned that he was being moved and demanded to know the reason why. Luft Decl. at ¶ 7. While Plaintiff admits that he did not want to move, he also states that he had no problem moving. Pl.'s Nov. Dep. at p. 22. Plaintiff informed Luft that he had no draft bags for moving his possessions, and Luft ordered Plaintiff to go to Draft Process to obtain bags. Luft Decl. at ¶ 8.

The parties' accounts diverge at this point. Defendant Luft states that he let Plaintiff out of the dormitory, and that while Plaintiff was in the porch area of the dormitory, he observed Plaintiff bend over, grab his chest, and fall to the ground. Luft Decl. at ¶ 10. Plaintiff, on the other hand, claims that, as he was exiting his cube, Luft ordered him to stand against the wall and spread his legs in order that he could search him. Pl.'s Nov. Dep. at p. 24; Compl. at p. 7. Plaintiff complied, but Luft ordered Plaintiff to spread his legs further out, although Plaintiff had spread his legs as far as he could. Compl. at p. 7. Luft began searching Plaintiff's pockets and removed Plaintiff's asthma pump and nitroglycerine, which he threw onto the floor. Pl.'s Nov. Dep. at p. 24. Luft then kicked Plaintiff's legs out from under him, and Plaintiff fell to the ground. *Id.* At the same time that he kicked Plaintiff's legs, Plaintiff also claims that Luft pushed him up against the wall, causing him to scrape his elbow. *Id.* at pp. 29-30. Plaintiff was on floor, and Luft ordered him to get up, which Plaintiff claimed he was unable to do. *Id.* at p. 26. Four other officers, whom Plaintiff was unable to identify, arrived and began joking with Luft. *Id.* at pp. 26-28. As Plaintiff was lying on the floor,

he began to experience chest pains. *Id.* at pp. 26-27. Plaintiff claims that Luft then made a crude joke in which he offered to put his penis in Plaintiff's mouth. *Id.* at p. 25. Luft entirely denies Plaintiff's version of the events. Luft Decl. at ¶¶ 14-16.

The parties agree that after Plaintiff complained of chest pains, a nurse was summoned who examined Plaintiff, administered nitroglycerine from Plaintiff's self-carry supply, and transported him to the infirmary. Pl.'s Nov. Dep. at p. 32; Luft Decl. at ¶¶ 10-11. Luft states that he immediately called for a medical response, and that Nurse Aidan O'Connor arrived within minutes, Luft Decl. at ¶¶ 10-11, whereas Plaintiff estimates that Nurse O'Connor arrived approximately ten minutes after he had first fallen to the ground, Pl.'s Nov. Dep. at p. 31.

At the infirmary, Plaintiff reported that his chest pain had lessened, but requested a second dose of nitroglycerine, which Nurse O'Connor administered. Dkt. No. 64-5, Decl. of Aidan O'Connor, dated Sept. 12, 2016, at ¶ 5. After the second dose of nitroglycerine, and within approximately a half-hour of when he first experienced the chest pains, Plaintiff's pain subsided. *Id.*; Pl.'s Nov. Dep. at p. 32. Plaintiff refused to have an EKG or to be transported to the hospital for further evaluation and signed a Refusal of Medical Examination and/or Treatment form. O'Connor Decl. at ¶ 7. Plaintiff explains that he did not want to go to the hospital if the nitroglycerine relieved his pain, Pl.'s Nov. Dep. at pp. 32-33, and asked that he be allowed to return to the dormitory, O'Connor Decl. at ¶ 7.

Aside from his complaints of chest pain, the only other injury Nurse O'Connor noted was a "superficial abrasion to his left elbow which [he] treated by cleaning the area." O'Connor Decl. at ¶ 5. As far as his physical injuries, Plaintiff claims that in addition to the scrape on his elbow, he had a bruise on his shin. Pl.'s Nov. Dep. at pp. 29-30. He states that both of these injuries healed

*-4-*

within a couple days and did not cause any lasting scars or pains. *Id.* at p. 30.

On July 1, 2014, Plaintiff filed a grievance alleging that he had been assaulted by Luft on June 28, 2014. Dkt. No. 64-1, Defs.' Rule 7.1 Statement of Material Facts ("Defs.' SMF") at ¶ 36.[2] On July 22, 2014, Plaintiff advised the Inspector General's Office that he had been assaulted by Luft. *Id.* at ¶ 38. Defendant Sergeant Farrell was assigned to investigate Plaintiff's grievance, and on July 25, 2014, he escorted Plaintiff to the infirmary in order to have pictures taken. Pl.'s Aug. Dep. at pp. 11-12; O'Connor Decl. at ¶ 14. As they were walking to the infirmary, Plaintiff alleges that Farrell stated "you just fucked up. I'm tired of good white people going down by motherfuckers like you. We will get you for this. You nothing but a pussy, you motherfucker." Compl. at p. 9. Plaintiff claimed that he was concerned that Farrell might try to set him up with a fabricated misbehavior report or by planting a weapon in his cell. *Id.* at pp. 9-10. O'Connor examined and took pictures of Plaintiff and noted no evidence of any injuries. O'Connor Decl. at ¶ 14.

Plaintiff filed a grievance against Farrell on July 25, 2014, complaining of Farrell's comments. Pl.'s Aug. Dep., Ex. 1. Plaintiff alleges that Farrell continued to harass him. On one occasion when Plaintiff was sent to Albany Medical Center on account of his heart condition, Plaintiff claims that Farrell sarcastically asked him if he was having any chest pain. Compl. at p. 10. On other occasions, Plaintiff alleges that Farrell made comments such as "My day will be better

---

[2] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y.L.R. 7.1(a)(3). While Plaintiff has filed a response to Defendants' Statement of Material Facts, it is not properly supported by citations to the record. *See* Dkt. No. 70, Pl.'s Rule 7.1 Statement of Material Facts ("Pl.'s Counter-SMF"). The Court will cite to the facts as set forth in Defendants' Statement of Material Facts when properly supported by the record. *See GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)

when you are dead." *Id.* On December 7, 2014, Plaintiff alleges that Farrell stated "Your time is coming. If we can kill you'll [sic] on the outside and get away, what makes you think that it can't happen with you." *Id.* at p. 11. Farrell denies having made any threatening or harassing statements to Plaintiff at any time. Dkt. No. 64-3, Decl. of Mark Farrell, dated Oct. 14, 2016, at ¶ 4.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more

*-6-*

than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Claims Against Defendant Farrell

#### *1. Legal Standard*

"[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). To state a First Amendment claim for retaliation, an inmate must demonstrate that (1) he or she was engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493.

The plaintiff bears the initial burden in showing that "that the protected conduct was a substantial or motivating factor" for the defendant's actions. *Graham v. Henderson*, 89 F.3d at 79. To satisfy the causal connection prong, a prisoner must present evidence inferring that a defendant acted with an improper motive. Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) the prisoner's prior good disciplinary record;

-8-

(3) the prisoner's vindication at his disciplinary hearing; and (4) the defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d at 872-73.  Direct evidence is not required and a plaintiff may meet this burden by presenting "sufficiently compelling" circumstantial evidence of a retaliatory motive.  *Bennett v. Goord*, 343 F.3d 133, 138-39 (2d Cir. 2003).  If the plaintiff carries this initial burden, the burden then shifts to the defendants to show that they would have taken the same action absent the retaliatory motive.  *Graham v. Henderson*, 89 F.3d at 79 (citing, *inter alia*, *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994)); *see also Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (stating that a defendant may successfully meet this burden by demonstrating that the "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report").

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care."  *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d at 491("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."); *see also Graham v. Henderson*, 89 F.3d at 79.

### 2.  Analysis

The basis of Plaintiff's claims against Defendant Farrell is the series of verbal threats and harassment that Farrell allegedly made against Plaintiff in retaliation for filing a grievance against Defendant Luft on June 28, 2014.  Plaintiff specifically alleges that: (1) on July 25, 2014, Farrell stated "You just fucked up.  I'm tired of good white people going down by motherfuckers like you.  We will get you for this.  You nothing but a pussy, you motherfucker," Compl. at p. 9; (2) on one

occasion when Plaintiff was sent to Albany Medical Center for his heart condition, Farrell sarcastically asked, "Any chest pain? Any chest pain?," *id.* at p. 10; (3) in the mess hall, Farrell would make comments such as "My day will be better when you are dead" or "I was hoping that red dot was you," *id.*; and (4) on December 7, 2014, Farrell stated "Your time is coming. If we can kill you'll [*sic*] on the outside and get away, what makes you think that it can't happen with you," *id.* at p. 11. Although Farrell denies having made any of these statements, Farrell Decl. at ¶ 4, Defendants argue that even if Plaintiff's assertions are accepted as true, he has failed to establish a *prima facie* case of retaliation, on the grounds that (1) Farrell's statements do not constitute adverse action and (2) there is no causal connection between the grievance Plaintiff filed against Luft and Farrell's statements. Dkt. No. 64-6, Defs.' Mem. of Law at pp. 8-12.[3]

The Court first considers whether Farrell's statements amount to an adverse action; namely, whether they would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d at 353. As the Second Circuit has noted, "it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d at 492-93. "Prisoners may be required . . . to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* at 493 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). Nonetheless, the case law in this Circuit "reflects that verbal threats may constitute adverse action, though whether they constitute adverse action seems to depend on their specificity and the context in which they are uttered." *Lunney v. Brureton*, 2007 WL 1544629, at *23 (S.D.N.Y. May 29, 2007) (collecting

---

[3] The Court notes that Defendants' Memorandum of Law also addresses certain additional alleged incidents of retaliation by Defendant Farrell that occurred after Plaintiff filed his Complaint. *See* Defs.' Mem. of Law at pp. 12-15. Since Plaintiff has not amended his Complaint to include these additional claims, the Court does not address them here.

cases).  "The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights."  *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010); *but see Ford v. Palmer*, 539 F. App'x 5, 7 (2d Cir. 2013) ("[I]n this context, the vague nature of the alleged threat . . . could have enhanced its effectiveness as a threat and increased the likelihood that a person of ordinary firmness would be deterred from filing additional grievances.").

Courts are divided over the level of specificity required before a verbal threat is actionable. *Compare Barrington v. New York*, 806 F. Supp. 2d 730 (S.D.N.Y. 2011) (granting summary judgment on retaliation claim based upon threat that "me and my boys [sic] going to get you" made while holding copy of grievance); *Kemp v. LeClaire*, 2007 WL 776416, at *15 (W.D.N.Y. Mar. 15, 2007) (finding threats that "your day is coming," "you'll be sent to your mother in a black box," and "you'll get you black ass kicked" insufficient to support retaliation claim); *Bartley v. Collins*, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237-38 (W.D.N.Y. 2005) (granting summary judgment on retaliation claim based upon statements that there are "no secrets in prison" and that the plaintiff would "have to pay the consequences"), *with Gomez v. Graham*, 2016 WL 8652781, at *13 (N.D.N.Y. June 16, 2016) (finding threat that if the plaintiff proceeded with his grievance, then he "was going to be hurt" sufficient to support retaliation claim); *Quezada v. Roy*, 2015 WL 5970355, at *23 (S.D.N.Y. Oct. 13, 2015) (finding that threat to kill the plaintiff sufficient to support retaliation claim);  *Lunney v. Brureton*, 2007 WL 1544629, at *23 (finding threat that "if you don't stop writing grievances I'm going to break your fuckin' neck" sufficient to support retaliation claim).

Given the disparity in the case law, the issue of whether Farrell's alleged verbal harassment

*-11-*

of Plaintiff constitutes an adverse action is a close one. Nonetheless, the Court finds that Farrell's statements would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," *Davis v. Goord*, 320 F.3d at 353, for the following reasons. First, Farrell's alleged statements contain at least two direct threats that are more than mere vulgar or abusive language. On July 25, Farrell stated that they would "get" Plaintiff for filing grievances; on December 7, Farrell stated that Plaintiff's time was "coming" and implied that they could "kill" Plaintiff and "get away" with it. Compl. at pp. 9 & 11. Second, although these threats alone might be insufficient to establish an adverse action, *see Kemp v. LeClaire*, 2007 WL 776416, at *15; *Bartley v. Collins*, 2006 WL 1289256, at *6, the Court must also consider the context in which these threats were made. Particularly significant to the Court's view of these threats is Plaintiff's contention that Farrell conducted an on-going pattern of harassment against him, in which he repeatedly joked about Plaintiff's death. *See* Compl. at p. 10. Although Plaintiff's allegations in this respect are vague and non-specific,—he is unable to recall the specific dates on which Farrell made comments such as "I hope you die," Pl.'s Aug. Dep. at pp. 25-26—and thus are not sufficient to form the basis for a retaliation claim on their own, his allegation that Farrell engaged in a persistent course of harassment, every time he saw him, over approximately six months, *see* Pl.'s Aug. Dep. at p. 25, certainly makes Farrell's direct threats against him more credible. On this basis, the Court finds that a reasonable factfinder could conclude that Farrell's threats were sufficient to deter a person of ordinary firmness from filing further grievances.

The Court next considers whether Plaintiff has sufficiently established a causal connection between the grievance he filed and Farrell's threats. Defendants argue that Plaintiff has not presented any evidence that would explain why Farrell would retaliate against Plaintiff for filing a

grievance against Defendant Luft.  *See* Defs.' Mem. of Law at p. 10 (citing *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011)).  While Defendants are correct that "[a]s a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant," *Hare v. Hayden*, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011), in this case, Plaintiff claims that Farrell explicitly connected his threats to the grievance Plaintiff filed against Luft.  According to Plaintiff, Farrell stated that they would "get" Plaintiff for filing a grievance against Luft.  Compl. at p. 9.  Thus, Plaintiff offers direct evidence that Farrell's threats were retaliatory.  *See Colon v. Coughlin*, 58 F.3d at 873 (finding that "alleged admission of the existence of a retaliatory scheme" sufficient to create genuine issue of material fact).

Defendants also argue, in conclusory terms, that Farrell is entitled to qualified immunity because he "properly and professionally investigated plaintiff's allegations that he had been assaulted by Luft."  Defs.' Mem. of Law at pp. 21-22.  However, as outlined above, there are significant issues of material fact that are not appropriately resolved on a motion for summary judgment.  The Court therefore cannot determine whether it would have been "objectively reasonable" for Farrell to believe that it did not violate "clearly established" law to threaten Plaintiff after he filed a grievance against Luft.  *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Accordingly, the Court recommends that Defendants' Motion be **denied** as to Plaintiff's First Amendment retaliation claims against Defendant Farrell.

### B.  Claims Against Defendant Luft

#### 1.  Excessive Force

##### a.  Legal Standard

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is

applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6-7. To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999).

The inmate must establish that the conduct alleged is "sufficiently serious" to reach constitutional dimensions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This inquiry is "context specific, turning upon contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d at 263. Regarding the objective element, "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency always are violated" regardless of whether a "significant injury" is apparent.

-14-

*Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9). For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct. To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including

> the extent of the injury and the mental state of the defendant, as well as the need for
> the application of force; the correlation between that need and the amount of force
> used; the threat reasonably perceived by the defendants; and any efforts made by
> defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003); *see also Hudson v. McMillian*, 503 U.S. at 7. When prison officials are accused of using excessive force, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 6-7 (citing *Whitley v. Albers*, 475 U.S. at 320-21). Where "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may . . . be sufficient evidence of a culpable state of mind." *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997).

### b. Analysis

Here, the parties offer widely differing accounts of the events of June 28, 2014. According to Plaintiff, Defendant Luft ordered him to get against the wall and began searching him; Luft then kicked his legs out, causing him to fall to the ground. Pl.'s Nov. Dep.at p. 23. Plaintiff claims that he suffered a scrape to his right elbow and a bruise to his shin. *Id.* at pp. 30-31. Plaintiff also claims

*-15-*

that he began to experience chest pains as he was laying on the ground. *Id.* at p. 26. Luft, on the other hand, asserts that Plaintiff fell to the ground after experiencing chest pains; Luft wholly denies that he performed a pat frisk on Plaintiff or in any other way applied force to him. Luft Decl. at ¶¶ 10 & 14.

     This factual dispute, however, does not preclude the entry of summary judgment in favor of Defendant, because even if Plaintiff's version of the events is credited, Luft applied no more than *de minimis* force that is not sufficiently serious to constitute an Eighth Amendment violation. Accepting Plaintiff's allegations as true, Luft "kicked [Plaintiff's] legs out from under [him]" during a pat frisk, which caused him to fall and suffer a scrape to his right elbow and bruise to his shin, both of which healed within a "couple days."[4] Pl.'s Nov. Dep. at pp. 24 & 30. No reasonable factfinder could find that such an application of force was more than *de minimis*. A number of district courts in this Circuit have held that similar applications of force during a pat frisk are insufficient to state an Eighth Amendment claim. *See Vogelfang v. Capra*, 889 F. Supp. 2d 489, 507 (S.D.N.Y. 2012) (finding plaintiff's allegation that guard "pushed her up against a wall" during a pat frisk insufficient to support Eighth Amendment claim); *Tavares v. City of New York*, 2011 WL 5877550, at *5-7 (S.D.N.Y. Oct. 17, 2011) (granting summary judgment on inmate's claim that he was subjected to excessive force when he was thrown up against the wall and his legs kicked apart during a pat frisk); *Kalwasinski v. Artuz*, 2003 WL 22973420, at *6-7 (S.D.N.Y. Dec. 18, 2003) (finding that "minor amount of force actually used . . . was commensurate with the need to conduct a pat frisk"); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 471 (S.D.N.Y. 1998) ("[A]lthough kicking an inmate's ankles and feet cannot be condoned, this use of force is *de minimus* and insufficient to rise to the

---

     [4] Plaintiff admits that his chest pains were not caused by Luft's application of force, but rather began as he was lying on the ground. Pl.'s Nov. Dep. at p. 26.

level of a constitutional violation.").

Accordingly, because Plaintiff is unable to establish that Luft's actions were objectively serious, the Court recommends that summary judgment be **granted** on his excessive force claim.

### 2.    Retaliation

Plaintiff also asserts that Defendant Luft's actions against him were in retaliation for the grievance Plaintiff had filed against him.  Compl. at p. 12.  Defendants argue that for the same reasons Luft's actions were not objectively serious under the Eighth Amendment, they are also insufficient to constitute adverse action under the First Amendment.  Defs.' Mem. of Law at pp. 20-21.

The Court first notes that a physical assault may constitute adverse action under First Amendment even without rising to the level of an Eighth Amendment excessive force violation. *See Flemming v. King*, 2016 WL 5219995, at *5 (N.D.N.Y. June 20, 2016) ("[T]he alleged assault need not rise to the level of an Eighth Amendment excessive force violation in order to be considered an adverse action for purposes of First Amendment retaliation analysis.").  Nonetheless, even viewed in the most favorable light, Plaintiff's allegations are insufficient to satisfy this lower standard.  At most, Plaintiff claims that he was subjected to a rough pat frisk by Luft.  As other courts have noted, "pat frisks are an ordinary part of prison life and would not (and do not) deter the average inmate from continuing to exercise his First Amendment rights." *Henry v. Annetts*, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010); *see also Amaker v. Fischer*, 2014 WL 8663246, at *8 (W.D.N.Y. Aug. 27, 2014) ("[P]at frisks, even if conducted for retaliatory reasons, cannot constitute an adverse action as required to support a First Amendment retaliation claim.").

Accordingly, the Court recommends that Defendants' Motion be **granted** as to Plaintiff's

First Amendment retaliation claim against Defendant Luft.

### C.  Plaintiff's Rule 56(d) Request to Re-Open Discovery

Plaintiff opposes Defendants' Motion under FED. R. CIV. P. 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the Court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Dkt. No. 68-1, Aff. of Derrick Morgan, dated Nov. 21, 2016.  Plaintiff appears to request that the Court defer ruling on Defendants' Motion in order that he may seek additional discovery, namely, (1) "[a]ny and ALL Institutional Claims Filed by the plaintiff at Greene Correction Facility" and (2) "a copy of A-1 dorm log book for the date of June 28th 2014 for the 7X3 tour."  *Id.* at ¶ 17. Plaintiff claims that such discovery would show that he "never returned to dorm E-2 from the infirmary, but went to A."  *Id.* at ¶ 22(a).

A party seeking additional discovery pursuant to FED. R. CIV. P. 56(d) must file an affidavit explaining "1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful."  *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985).

Although Plaintiff has filed an affidavit attempting to comply with FED. R. CIV. P. 56(d), that affidavit fails to show his entitlement to the requested relief.  In the first place, the discovery Plaintiff seeks has no relevance to the matters at issue on this Motion.  Plaintiff asserts that the discovery would show that after being discharged from the infirmary he collected his property from

the "porch" of the E-dormitory and never reentered that dormitory before moving to the A-dormitory. Morgan Aff. at ¶ 22(a). The fact of whether or not Plaintiff reentered the E-dormitory before moving to the A-dormitory has no relevance to the issues of (1) whether Defendant Luft used excessive force and retaliated against Plaintiff or (2) whether Defendant Farrell retaliated against Plaintiff.

Furthermore, Plaintiff admits that he did not attempt to seek this discovery before the discovery deadline in this action expired. *See* Morgan Aff. at ¶ 24 ("This is the first time that the plaintiff is requesting the above-mention [*sic*] documents."). "If a party seeks to reopen discovery after discovery has closed, he must show a good cause." *Justice v. Wiggins*, 2014 WL 4966896, at *7 (N.D.N.Y. Sept. 30, 2014) (citing *Lore v. City of Syracuse*, 232 F.R.D. 155, 159 (N.D.N.Y. 2005)). Here, Plaintiff cannot show good cause for his failure to seek this discovery before the discovery deadline expired.

Accordingly, Plaintiff's request, under FED. R. CIV. P. 56(d), to reopen discovery is **denied**.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 64) be **GRANTED in part** and **DENIED in part**; and it is further

**RECOMMENDED**, that if the above recommendation is accepted, that Defendant Luft be **DISMISSED** from this action and this case be deemed trial ready on the First Amendment retaliation claim against Defendant Farrell; and it is further

**ORDERED**, that Plaintiff's Letter-Motion (Dkt. No. 61) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   June 22, 2017
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[5] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).